## In re SACHS.

District Court, D. Maryland. March 21, 1929.

No. 5005.

See, also, 21 F.(2d) 984; 30 F.(2d) 510.

Daniel C. Joseph, of Baltimore, Md., for receiver.

Bernard U. Proser, of Baltimore, Md., for defendant.

WILLIAM C. COLEMAN, District Judge. This case arises upon a petition of the receiver in bankruptcy to be allowed to recover five automobiles. Before the matter was heard, the automobiles were sold under order of court, whereby the rights of the parties as finally determined would be transferred to the proceeds of the sale. Subsequent to the filing of the petition—that is to say, on May 27, 1927—Louis Sachs was adjudicated a bankrupt, and the matter prosecuted by the trustee in bankruptcy. The circumstances under which the cars were acquired by the bankrupt are undisputed, and appear as follows from an agreed statement of facts which has been stipulated in the case:

Two of the five cars were the property of one Livingston, who had intrusted them to the bankrupt for sale; the agreement, which was verbal, being that the bankrupt was to

retain all excess over a certain amount obtained by sale of the cars. It was specifically understood that these cars would remain the property of Livingston; sale and delivery to the prospective customer not to be consummated unless and until the bankrupt paid to Livingston a certain stipulated price; any excess obtained to go to the bankrupt as his profit. Livingston was not to indorse or to deliver the certificates of title to these cars, unless and until he had received from the bankrupt the stipulated price. The bankrupt remained in possession of the cars until the day prior to the filing of the petition in bankruptcy, when Livingston removed the cars from the bankrupt's salesroom.

The remaining three cars were originally the property of the bankrupt, who had purchased them secondhand for resale. He had induced Livingston to buy an automobile (not here involved) for him for the sum of $650, with the understanding that, before resale could be made, Livingston was to receive $700. Shortly thereafter, but within four months of the filing of the bankruptcy petition, the bankrupt found a purchaser and gave Livingston a check for $700 as agreed, and thereupon obtained title papers and consummated the resale. The check, however, was returned dishonored several times, and, upon Livingston's threat to institute criminal proceedings against Sachs, the latter gave to Livingston a bill of sale covering the three cars, which was recorded three days later, and delivered to him the title papers. The petition in bankruptcy was filed four days later, and ten days thereafter Sachs was adjudicated a bankrupt. However, the day before the petition was filed, Livingston removed these three cars, as well as the other two, from the bankrupt's possession. Since questions arise respecting the two first above named cars different from those respecting the remaining three cars, they will be considered separately.

As to the first two cars, the trustee contends that he is entitled to reclaim them for the bankrupt estate. He claims, first, that the agreement between the bankrupt and Livingston, whereby the bankrupt was allowed to exhibit the cars as part of his stock in trade, was void as against his creditors, by virtue of the provisions of the Maryland Code governing agents and factors (article 2, §§ 18 and 20), whereby it is provided that any one engaging in any mercantile business with an agent or agents, or doing business under any name, title, or designation other than his own, shall first comply with certain recordation requirements (which was not done) disclosing the principal or true owner of the business,

its character, etc.; and that, if this requirement is not met by such person, then his creditors shall be entitled to obtain judgment against him in the name, title, or designation under which the business is being conducted, and to subject all assets possessed, used, or acquired in the business to execution in satisfaction of such judgment. The second contention of the trustee is that the agreement was nothing more nor less than a conditional contract of sale, and, being unrecorded, is void in violation of article 21, § 55, of the Maryland Code.

■ Taking up the last point first, the court finds that the agreement was in fact a consignment contract, and not one of conditional sale. The feature which distinguishes a conditional sale from a consignment is that in the former the purchaser undertakes an absolute obligation to pay for the goods, while the latter is nothing more than a bailment for sale. See Williston on Sales, § 338. Here there is no evidence of any obligation on the part of Sachs to buy the cars. He was employed to sell them, and was to be given a bonus for so doing. Livingston, then, being a consignor of the cars, had a right to them which was superior to general creditors or the trustee under section 47a(2) of the Bankruptcy Act (11 USCA § 75(a)(2)—Ludvigh v. American Woolen Co., 231 U. S. 522, 34 S. Ct. 161, 58 L. Ed. 345; Rockmore v. American Hatters & Furriers (C. C. A.) 15 F.(2d) 272—unless his rights are changed by some provision of Maryland law.

■ This brings us to a consideration of the first point raised by the trustee, namely, that the Maryland Agents and Factors Act renders the undertaking void as against the creditors of Sachs. There is no proof, however, that the provisions of this act, above summarized, cover the present situation; that is to say, at least, it is not clear that Sachs was doing business in such manner as an agent or factor as would bring him under the operation of this act.

But assuming, without deciding, this to be true, section 9 of that act appears expressly to exempt from the operation of the later sections goods consigned as have been the two cars in the present case. That section provides that "the owner of any such [intrusted or consigned] goods, wares or merchandise in the hands of an agent or factor, unsold and not pledged, may demand and recover the same from such agent or factor, or trustee of such agent or factor in the event of his insolvency and in preference of all other creditors of such agent or factor."

The circumstances surrounding this trans-

action are clearly distinguishable from those arising in a previous case growing out of this same bankruptcy proceeding. See Abram C. Joseph v. Eleazer Winakur, 30 F.(2d) 510. There the automobiles in question originally belonged to the bankrupt, and Winakur lent him money for the conduct of his business. The bankrupt gave bills of sale covering the cars, and simultaneously entered into consignment agreements whereby the bankrupt was to have possession of the cars for a period of 90 days, in order to sell them and pay the bills of sale, with interest, or return the cars; Winakur retaining the title papers. The bills of sale were recorded, but the consignment agreements were not.

The Circuit Court of Appeals, in reversing the finding of this court on this part of the case, held that Winakur's status under the Maryland law was that of a holder of an unrecorded chattel mortgage; that is to say, that the relation between the bankrupt and Winakur was that of debtor and creditor, not consignor and consignee, and that, since the so-called consignment agreements, which, together with the bills of sale, constituted chattel mortgages, were not recorded, the transaction was void as against subsequent creditors. In the present case there is no evidence either of a chattel mortgage or a conditional sale, but merely a bailment, and therefore it is not governed by the aforegoing decision of the Circuit Court of Appeals.

It follows from the above that the petition of the trustee to be awarded the proceeds from the sale of the first two cars must be denied.

With respect to the remaining three cars, the trustee contends that the giving of the bill of sale a few days before the bankruptcy constitutes a preference, voidable under sections 60a and 60b of the Bankruptcy Act 11 USCA § 96(a)(b). Livingston, on the other hand, claims that, since the check given him by the bankrupt constituted a lien upon the bankrupt's funds at the time given, the subsequent giving of the mortgage in lieu of the dishonored check was a transfer for a present consideration, and therefore not a preference.

It is well settled that a check, since it is merely a request to the drawee bank to pay the amount of the check, does not of itself operate as an assignment of any part of the funds to the credit of the drawer with the bank. The Negotiable Instruments Law which is in effect in Maryland expressly so provides. Maryland Annotated Code, art. 13, § 208; Moses v. President, etc., of Franklin Bank, 34 Md. 575; National Union Bank v. Miller Rubber Co., 148 Md. 449, 129 A. 688.

This being true, the giving of the bill of sale on the three automobiles amounted to nothing more than the bald transfer of property to secure an antecedent debt. It further appears that Livingston knew, or by the exercise of reasonable care and diligence should have known, that Sachs was insolvent at the time. Therefore the transaction constituted a voidable preference. In re Klein-Moffett Co. (D. C.) 28 F.(2d) 523, and cases cited.

As to the proceeds from the sale of these three cars, then, the petition of the trustee must be granted.

An order will be entered in accordance with this opinion.